UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAY ROGERS, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 12 CV 3477 |
| THOMAS DART, et al., | ) ) | Hon. Sharon Johnson Coleman |
| Defendants. | ) ) | |

### MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Meyer's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6) and the remaining Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court denies Defendant Meyers' motion to dismiss and Defendants' motion for summary judgment.

### MOTION TO DISMISS

Defendant Meyers' argues that she should be dismissed from this action because Plaintiff failed to state a claim against her and/or she was not properly served with summons and the third amended complaint.

**Failure to State a Claim**

On July 12, 2013, Plaintiff's third amended complaint was screened pursuant to 42 U.S.C. § 1915A. Court's screen prisoner litigation claims under Section 1915A in the same manner as ordinary Federal Rule of Civil Procedure 12(b)(6) motions to dismiss. *See Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570

F.3d 811, 820 (7th Cir. 2009). At that time, the Court found that Plaintiff stated a claim against Defendant Meyers. The court has reviewed the amended complaint, the Court's previous order, and the parties briefs and finds that Plaintiff has sufficiently alleged an individual and official capacity claim against Defendant Meyers. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also, Jubeh v. Dart*, No. 11 C 3873, 2011 WL 6010267, at *2 (N.D. Ill. Nov. 29, 2011) (Gettleman, J.) (denying Aramark's motion to dismiss based on argument that it was not a state actor) (collecting cases). Accordingly, her motion to dismiss based on a failure to state a claim is denied.

**Improper and/or Untimely Service**

Defendant Meyer also argues that she should be dismissed from this action because she was not properly served with Plaintiff's third amended complaint.

When a defendant challenges the sufficiency of service, the plaintiff bears the burden to demonstrate that defendant was properly served. *Robinson v. Engineering Co. Pension Plan & Trust v. George*, 223 F.3d 445, 453 (7th Cir. 2000). If a plaintiff has not properly served a copy of summons and the complaint on the defendant "within 120 days after the filing of the complaint," the court "shall dismiss the action without prejudice . . . or direct that service be effectuated within a specified time." Fed. R. Civ. P. 4(m).

As applicable to the instant matter, service may be effected by means allowed under state law, personally delivering summons and the complaint to the plaintiff, leaving a copy of the summons and complaint at the plaintiff's dwelling with a suitable individual, or delivering a copy of the summons and complaint to an authorized agent to receive service of process. Fed. R. Civ. P. 4(e)(1), (2). In addition, service may be made on a corporation by delivering a copy of the summons and complaint on an agent of the corporation who is authorized to receive service

2

of process. Fed. R. Civ. P. 4(h)(1)(B).

Here, the parties do not dispute that service was completed by the U.S. Marshal, because Plaintiff is incarcerated, by leaving a copy of the summons and third amended complaint with the registered agent of Aramark, Defendant Meyers' employer and the food service provider at the Jail at the relevant times of Plaintiff's claims. Because Plaintiff raised a claim against Defendant Meyers in her official capacity and such a claim is, in actuality, a claim against the corporation, service was properly affected.

However, it is undisputed that service was not made until more than 300 days after Plaintiff's third amended complaint was filed. Thus, regardless of whether service was properly made by leaving a copy of the summons and third amended complaint with Aramark's registered agent, service was untimely.

Before dismissing an action due to untimely service, the court must determine whether the plaintiff can establish good cause for failing to timely effect service. *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996). If good cause is demonstrated, the court must extend the time for service. *Id*. Even if good cause is not shown, the court must consider whether a permissive extension of time is warranted. *Id.* at 341. A valid reason for the delay constitutes good cause. *Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 992, 934 (7th Cir. 2002).

Plaintiff has demonstrated good cause in the instant matter. Plaintiff is incarcerated and had to rely on the U.S. Marshal to effect service of the third amended complaint. Thus, the timing of service was not within Plaintiff's control. In addition, the docket reflects multiple attempts by the U.S. Marshal to effect service which was further complicated by Defendant Meyers' no longer working for Aramark.

In light of finding good cause for the delay in serving Defendant Meyers, the Court could grant an extension of time to have her served with the third amended complaint. However, Defendant Meyers has actual notice of the case and access to all the relevant documents in this matter. In the interests of judicial economy, Defendant Meyers' actual notice of the lawsuit, and the fact that having the U.S. Marshal re-serve Defendant Meyers would only extend the time of the litigation only to bring the matter back to the same place in litigation, Defendant Meyers' motion to dismiss under 12(b)(5) is denied. *See Moreno-Avalos v. City of Hammond, Ind.*, Nos. 2:13-CV-347-TLS, 2:13-CV-450-TLS, 2014 WL 3894349, at *3 (N.D. Ind. Aug. 8, 2014) (denying motion to dismiss even if service was improper based on same factors). Accordingly, her motion to dismiss based on improper/lack of service is denied.

## SUMMARY JUDGMENT

The remaining Defendants, Sheriff Dart, J. Bratlien, S. Muller, Phil Gnacinski, Bruce Schroer, Cook County, and Gary Hickerson, seek summary judgment as to all of Plaintiff's claims.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that

there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson*, 477 U.S. at 255 (quotation omitted).

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon to support the statement of additional facts. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir.2008).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir.2006) ("statement of material facts did [ ] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). District courts, in their discretion, may "choose[] to ignore and not consider the additional facts that a litigant has proposed" if the litigant failed to comply with Local Rule 56.1. *Cichon v. Coop. Plus, Inc.*, 401 F.3d 803, 809-10 (7th Cir. 2005) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995)).

5

In sum, "[f]or litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012).

Plaintiff responded to the motion for summary judgment with a memorandum in opposition to the motion, a response to Defendants' statement of material facts (of which there are 58), a statement of additional facts that requires the denial of summary judgment (of which there are 40), an addendum to his response to Defendants' motion for summary judgment and an addendum to his statement of additional facts (adding another 18) that requires the denial of summary judgment. In turn, Defendants' filed a response to Plaintiff's statement of additional facts that requires the denial of summary judgment and a reply brief. Defendants' did not reply to Plaintiff's response to their proposed statement of undisputed facts.

Both parties disputed many of the opposing parties proposed statements of facts. Those proposed facts that are properly disputed are not included in the relevant facts below. For example, Defendants rely on hearsay evidence in support of their proposed statement of undisputed facts 51 and 52. *See* (R. 114 ¶¶ 51, 52.) The proposed facts that are undisputed, properly supported, and relevant are included in the facts below.

Importantly, the Court is not required to scour the record looking for factual disputes nor is the Court required to piece together any parties' arguments for them. *See Diadenko v. Folino*, 741 F.3d 751, 757 (7th Cir. 2013); *see also Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989) ("A district court need not scour the record to make the case of a party who does

nothing."). With these standards in mind, the Court turns to the relevant facts of this case.

**Relevant Facts**

Plaintiff, Ray Rogers, was a pretrial detainee at Cook County Jail (Jail) from July 4, 2010, to July of 2013. (R. 114 ¶ 1.) Defendant, Thomas Dart, is the Sheriff of Cook County. (*Id.* ¶ 2.) Defendant, Gary Hickerson, was the Director of the Cook County Department of Corrections (CCDOC). (*Id.* ¶ 3.) Plaintiff never met Hickerson and wrote him one letter while at the Jail. (*Id.*) Defendant, Scott Bratlien, was the Superintendent of Division 10 during the relevant time period of Plaintiff's detention. (*Id.* ¶ 4.) Defendant, Phil Gnacinski is an Environmental Health Practitioner and Registered Sanitarian at the CCDOC. (*Id.* ¶ 5.) Defendant Gnacinski was responsible for inspecting and evaluating all food service facilities at CCDOC and assuring conformance with applicable federal and state regulations for food service at the jails. (R. 135 ¶ 24.) Defendant, Bruce Schroer, is the Chief Environmental Health Practitioner and Registered Sanitarian at the CCDOC. (R. 114 ¶ 6.) Defendant Schroer's responsibilities included conducting weekly safety and sanitation inspections to ensure that meals were properly stored. (R. 135 ¶ 48.) Defendant, John Mueller, was the Programs Coordinator/Programs Administrator during the relevant time period of Plaintiff's detention. (R. 114 ¶ 7.) Defendant Mueller was in charge of the religious diet program and was responsible for addressing problems and/or concerns regarding that program. (R. 135 ¶ 25.) Defendant, Heidi Meyers, was the Registered Dietician for Aramark Correctional Services. (R. 114 ¶ 8.) Defendant, Cook County, is a party to the litigation for purposes of indemnification. (*Id.* ¶ 9.)

In November 2011, Plaintiff completed a Religious Interview Form ("Form") and was approved to be provided a lacto-ovo diet consistent with his Islam religion. (*Id.* ¶ 10.) On the face of the Form, detainees are provided notice of the consequences of violating the terms set

forth by the CCDOC with the statement, "**Violations may terminate your participation in this program.**" (*Id.* ¶ 27.) (emphasis in original.) Paragraph 11 of the Form states, "Do you understand that you may only purchase and consume foods in compliance with your religious dietary laws from the commissary, if you are approved for the religious diet?" (*Id*. ¶ 27.) Plaintiff circled "Yes" and wrote "Yes" in response to Paragraph 11 of the Form. (*Id.* ¶ 28.)

During the relevant time period, there were three different types of religious meals being provided to detainees: kosher (individual pre-packaged frozen kosher entrees), lacto-ovo vegetarian (excluding all meat and fish, but including egg and dairy products) and vegan (excludes all meat, fish and dairy products with additional fruit). (*Id.* ¶ 30; Pl.'s Resp. ¶ 30.)

On March 31, 2012, Plaintiff completed an inmate request form stating, the "Lacto Ovo meal being provided to me is not the proper religious meal. It contains certain dairy products (pertinent to my belief) that are unlawful for me to consume. I am strictly requesting a[n] Islamic vegan meal not lacto-ovo which contains dairy products." (R. 114 ¶ 48.) Plaintiff's commissary purchases on March 13, 20, and 27, 2012, show that Plaintiff purchased several dairy products including strawberry cremes, mayonnaise and cheese spread. (*Id*.)

Defendant Gnacinski responded to the grievance but Plaintiff did not feel that the issue was resolved so he went on a hunger strike. (R. 135 ¶ 8.) The one-day menu provided by Plaintiff indicates: (1) breakfast consisted of: "Same as regular, Except NO MEAT[.] Serve 2 pkts Peanut Butter OR 1 eggw/ 1 pc margarine; (2) lunch consisted of: 3 slices of bread[,] 3 pkts PB, 3 oz Cheese or 2 ea eggs[,] 1 ea Snack (served from regular menu)[,] 1 pkt Jelly or Mayo[,] 1 Koolaid pkt; and (3) dinner consisted of: 1 sl bread, 1 pc mar, ½ hot veg, 11/2 starch, 1 cup beans, ML Dessert, ½ cup salad, ½ oz dressing and 8 oz milk." (R. 135 ¶ 7; R. 135 Ex. DD.)

On April 17, 2012, Plaintiff also filed a grievance complaining that, while there was a

procedure for detainees to receive a regular lunch to consume either prior to or after a court appearance, there was no meaningful procedure for ensuring that detainees receive a lunch to consume either prior to or after a court appearance that was consistent with their religious beliefs. (*Id.* ¶ 14; R. 135 ¶ 27.) Plaintiff stated that he could not eat a court lunch because they were not consistent with his religious beliefs. (R. 114 ¶ 14.) Defendant Schroer, responded to Plaintiff's grievance, indicating that a regular meal was provided to detainees and that necessary adjustments were being made to ensure that detainees receive a religious meal upon returning from court. (*Id.*) The parties dispute how many meals Plaintiff missed due to the procedure in place at that time. (R. 135 ¶ 16; Defs.' Resp.)

The procedure at that time provided that detainees who were listed under the Religious Meal Plan were given their religious breakfast meal at the Jail and were supposed to have their religious lunches saved for them by divisional staff for when they returned from court. (*Id.* ¶ 41.) However, due to logistical problems with this procedure based on the unpredictable timing of detainees returning from court, lunches could only be stored in a cooler for four hours, after that time, the lunches were discarded. (*Id.*) Detainees who were having their lunches saved on the tier were also given a regular court sack lunch. (*Id.* ¶ 42.) Aramark's nutritionist verified that these lunches were approximately 2300 calories which exceed the 1800-2100 calories set forth in the Illinois Jail/Administrative Code. (*Id.*) In early 2012, the procedure was changed. (*Id.* ¶ 43.) Under the new procedure, a detainee was to inform the officer transferring the detainee to court that he was supposed to receive a religious meal for lunch. (*Id.* ¶ 44.) The officer was to verify that the detainee was supposed to receive a religious lunch and then inform the Central Kitchen to have Aramark prepare that lunch. (*Id.*) The lunches were then picked up by officers on the transport buses and distributed to the detainees for consumption at court. (*Id.*)

Shortly after Plaintiff filed his grievance about not receiving religious meals for court, an audit was conducted on Plaintiff's commissary purchases. (R. 114 ¶ 15.) The purpose of the audit was economical and operational. (R. 135 ¶ 56.) There is an accepted correctional practice of auditing commissary records of detainees who participate in religious plans to ensure that they are not violating the terms and conditions of their agreement with the Jail by purchasing and consuming food that does not comport with their stated religious beliefs. (*Id.* ¶ 53.) In April 2012, Defendants Schroer and Gnacinski printed out a list of the detainees receiving religious meals. (*Id.* ¶ 54.) The list included over 80 detainees. The Defendants then requested a printout of the commissary purchases by the inmates who were on the list of detainees receiving a religious meal. (*Id.*)

The commissary records showed that 75% of the detainees on the list had at least one purchase violation, including Plaintiff who purchased a non-halal food product on December 12, 2011. (*Id.*; R. 114 ¶ 15.) This was the only non-halal food item Plaintiff purchased while on the religious diet program. (R. 135 ¶ 28.) The Defendants provided Defendant Mueller a list of those detainees who had violated the terms and conditions of their program agreement. (R. 135 ¶ 54.) Several detainees who had violated the terms of their agreement were released from the religious diet program. (*Id.*) On April 23, 2012, Defendant Mueller sent Plaintiff a notice that his religious diet had been administratively cancelled because documentation indicated that on December 12, 2011, he purchased BC Hot Chili, a product containing meat. (*Id.* ¶ 55; R. 114 ¶ 15.) From November 11, 2011, until the day that Plaintiff's religious diet was canceled, there were no other routine audits conducted regarding detainees' who participated in the religious diet program and their purchases in the commissary. (R. 135 ¶ 29.)

Cook County entered into a contract with Aramark Correctional Services to provide meal

services to the detainees for the CCDOC during the relevant time period. (R. 114 ¶ 32.) Per the Aramark Contract, Aramark was responsible for developing the menu for the CCDOC. (*Id.* ¶ 33.) The menus were required to be in compliance with the recommended dietary allowance for males and females, ages 17 to 40 years of age. (*Id.*) The Aramark Contract further required that the "variety, quality and appearance of the meals shall be consistent with approved American Dietetic Association and American Correctional Association certification standards for Food Service Correctional Institution, and standards set by the Cook County Department of Corrections. Food shall be nutritionally adequate, shall also meet the daily allowances of the National Academy of Sciences." (*Id.*) Aramark was required to "provide meals for detainees in accordance with the Religious Land Use and Institutionalized Persons ACT ("RLUIPA") and comply with all other federal, state, or local laws and court decisions. (*Id.*)

Under the Aramark Contract, religious meals were purchased by Aramark with their registered dietician, Heidi Meyers, overseeing the preparation of the food. (*Id.* ¶ 34.) Much of the foods that were included in the religious meals were purchased and prepared in other locations and then delivered to the CCDOC. (*Id.*) Aramark was responsible for making sure that the religious meals were packaged and sealed with proper certifications before support services distributed them to the detainees at the Jail. (*Id.*)

Once Aramark prepared meals, Aramark was required to deliver the meals to a designated delivery point for the Jail officials to pick up and distribute the meals to the detainees. (*Id.* ¶ 45.) The contract also provided that all services provided by Aramark were subject to inspection by any party authorized or directed by Cook County to determine Aramark's conformity with the specifications within the contract. (*Id.* ¶ 47.) Under the contract, the cost of every therapeutic and religious meal is $0.50 more per detainee per day. (*Id.* ¶ 49.)

**Analysis**

Defendants move for summary judgment on all of Plaintiff's claims. In his response to the motion for summary judgment, Plaintiff withdraws his claims under RLUIPA due to his transfer to the Illinois Department of Corrections. Thus, Plaintiff's RLUIPA claims are dismissed.

Plaintiff claims that his right to the free exercise of his religion, his right to due process, and his right to equal protection were violated when he missed several religious meals due to the lack of/poor procedure in place for detainees to receive their meals when they were required to go to court. Plaintiff's claim is analyzed under the First Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (court should analyze similar claims under the most "explicit source[s] of constitutional protection"); *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (finding no error in District Court not addressing additional claims because any equal protection and Eighth Amendment claims based on same facts as a free exercise claim because the free exercise claim "gains nothing by attracting additional constitutional labels").

Defendants first argue that Plaintiff's religious belief was not sincere.

A detainee's right to practice his religion is protected under the First Amendment; however, a detainee's right to exercise his religion under the First Amendment is "subject to limits appropriate to the nature of prison life." *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). "Religious belief must be sincere to be protected by the First Amendment, but it does not have to be orthodox." *Grayson v. Schuler*, 666 F.3d 450, 454 (7th Cir. 2012.)

Defendants contend that Plaintiff's religious beliefs were not sincere because he purchased dairy products and shortly thereafter asked that his meals not include dairy products because of his religious beliefs. They also point out Plaintiff purchased a meat product contrary

to his alleged religious beliefs. In turn, Plaintiff avers, and testified at his deposition, that his religious beliefs are sincere and that he has struggled with some of the teachings. In light of Plaintiff's conduct and his testimony, genuine issues of material fact exist as to whether Plaintiff's religious beliefs are sincere.

Defendants next argue that any restrictions did not rise to a constitutional violation.

Restrictions on a detainee's exercise of his religion are permitted as long as the restrictions are reasonably related to legitimate penological objectives. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Legitimate penologoical interests include safety, security, and economic concerns. *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009). Furthermore, because the issues in prisons are complex and courts are generally ill equipped to deal with these types of problems, courts generally defer to the prison officials' judgments on these issues. *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). The First Amendment does not require that a detainee be afforded his preferred method of practicing his religion, and if other means are available for his religious practice, courts are to be particularly conscious of the measure of judicial deference owed to the correctional officers. *Turner*, 482 U.S. at 90. The alternatives provided "need not be ideal . . . they need only be available." *Overton v. Bazetta*, 539 U.S. 126, 135 (2003).

The court considers four factors in determining whether a restriction on a detainee's religious practice is constitutional: (1) whether the restriction is rationally related to a legitimate and neutral government objective, (2) whether alternative means exist for the detainee to practice his religion, (3) the impact an accommodation of the asserted right would have on guards and other inmates, and (4) whether there are obvious alternatives to the restrictions that show that the restrictions are an exaggerated response to the prison concern. *Turner*, 482 U.S. 89-91.

Defendants next argue that the missed meals due to the procedure at the time that did not

13

provide religious sack lunches when a detainee was going to court did not rise to a constitutional violation because the number of missed meals was *de minimis*. *See Rapier v. Harris*, 172 F.3d 999, 1007 n. 4 (7th Cir. 1999) (missing 3 meals out of 810 meals was a *de minimis* burden that did not violate the constitution). Here, the parties dispute how many meals Plaintiff missed due to the lunch procedure at the time. Plaintiff avers he missed at least thirteen meals and Defendants argue Plaintiff missed, at most, eight meals. Nor has either party made clear when the meals were missed. Thus, genuine issues of material fact exist as to whether the missed meals rose to a constitutional violation. *See Reed v. McBride*, 178 F.3d 849, 853-54 (7th Cir. 1999) (duration and amount of missed meals must be considered in determining whether prisoner's missed meals rose to a constitutional violation).

Furthermore, genuine issues of material fact exist as to the *Turner* factors. While Defendants' argue that security and cost restraints justified the procedure at the time, they provide little to no admissible evidence to demonstrate such. In addition, the new procedure demonstrates that alternative means did exist to assure Plaintiff received a sack lunch that was in compliance with his religious beliefs with little impact on the guards and other inmates. Thus, summary judgment cannot be granted on Plaintiff's First Amendment claim related to the sack lunch procedure that resulted in Plaintiff missing an unknown number of meals over an unspecified duration.

Plaintiff also claims that his religious meals violated his constitutional rights because they were monotonous and lacked proper nutrition. Inmates must be detained under humane conditions, which includes providing them with adequate nourishment. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Sain v. Wood*, 512 F.3d 886, 893 (7th Cir. 2008); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). A pretrial detainee's claim of unconstitutional conditions

14

of confinement is analyzed under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment. *See Anderson v. Gutschenritter*, 836 F.2d 346, 348-49 (7th Cir. 1988). However, the relevant question for a due process analysis is whether the challenged condition of confinement constitutes punishment in the same sense as punishment under the Eighth Amendment. *See Block v. Rutherford*, 486 U.S. 576, 583 (1984); *Tesch v. County of Green Lake*, 157 F.3d 465, 473 (7th Cir. 1998).

Plaintiff includes a menu for one day that does include many of the same food items being served at all meals. Defendants dispute that the meals were monotonous and lacked nutrition but they fail to provide evidence to support their denial. For example, they do not provide examples of menus demonstrating a variety of food items being served and they provide no evidence of the nutritional value of the meals served. While Defendants cite the contract to Aramark and the requirement in the contract that the meals comply with all nutritional guidelines, there is no evidence that the meals do comply with any of the nutritional guidelines. Accordingly, genuine issues of material fact also exist as to whether the religious meals Plaintiff received violated the Fourteenth Amendment.

Plaintiff also alleges that the Defendants manipulated the audit system to retaliate against him because of the grievances he had written regarding his religious meals.

To prevail on a claim of retaliation under the First Amendment, a plaintiff must establish that: (1) he engaged in a protected activity; (2) he suffered a deprivation likely to prevent future protected activities; and (3) there was a causal connection between the two. *See Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *see also Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). It is well established that an act taken against an inmate in retaliation for his exercise of his First Amendment rights may form the basis of a civil rights suit, even if the same act,

when taken for a different reason, would be otherwise permissible. *See, e.g.*, *Stanley v. Litscher*, 213 F.3d 340, 343 (7th Cir. 2000); *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000); *Bridges*, 557 F.3d at 541.

Here, the parties do not dispute that Plaintiff engaged in a protected activity when he filed grievances regarding his religious meals. Defendants argue that Plaintiff has not demonstrated a causal connection between the audit and the cancellation of Plaintiff's religious meals because they were justified in conducting the audit, all detainees in the religious meal program were audited, and Plaintiff was not the only detainee who violated the contract that had his religious meals cancelled. However, it is also undisputed that the audit was conducted very shortly after Plaintiff's grievances were filed, this was the only audit conducted during the relevant time period, and that only "several," not all, of the detainees who had violated their contract had their religious meals canceled. A jury could infer from these facts that the audit was performed in an attempt to "catch" Plaintiff in violation of his contract to cancel his religious meals in retaliation of him filing grievances related to those religious meals. Accordingly, summary judgment must also be denied as to this claim.

Defendants also argue that they are entitled to qualified immunity because Plaintiff's constitutional rights were not violated. However, as discussed above, genuine issues of material fact exist as to whether Plaintiff's constitutional rights were violated. Thus, Defendants are not entitled to qualified immunity.

Lastly, as to Defendants' motion for summary judgment, the Court finds that genuine issues of material facts exist as to the roles of the Defendants and their knowledge (or lack of knowledge) of the alleged constitutional violations.

Based on the above, Defendants' motion for summary judgment is denied.

**CONCLUSION**

For the foregoing reasons, Defendant Meyers' motion to dismiss [131] and Defendants' motion for summary judgment [112] are denied. Plaintiff's "motion opposing Defendants' motion for summary judgment [135] and motion opposing Defendant Meyers' motion to dismiss [136], construed as Plaintiff's response to Defendants' motions, are termed as a pending motion. Plaintiff's motion to have Defendants file a complete answer [102] is denied moot.

SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED: March 19, 2015